**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

*In re:* Application Pursuant to
28 U.S.C. § 1782 of

ABDULRAHMAN MUTABAGANI,

                Petitioner,

        v.

MOHAMMAD SAMER BIN MAHMOUD
ABDUL-HADI,

              Respondent.

No. 7:22-mc-00299(VLB)

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION
TO VACATE THE *EX PARTE* ORDER DATED NOVEMBER 10, 2022,
GRANTING DISCOVERY UNDER 28 U.S.C. § 1782, AND
QUASH THE SUBPOENAS SERVED PURSUANT TO THE ORDER**

**GREENBERG TRAURIG LLP**
Richard A. Edlin
Dale R. Goldstein
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200 (Phone)
(212) 801-6400 (Facsimile)
EdlinR@gtlaw.com
GoldsteinD@gtlaw.com

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...............................................................4

    A.    Respondent Mohamad Abdulhadi .......................................................4

    B.    Response to Petitioner's "Relevant Facts"...........................................4

    C.    Petitioner's Section 1782 Application and Requests for Discovery from Mr. Abdulhadi...............................................................................4

STATUTORY OVERVIEW OF 28 U.S.C. § 1782.......................................................5

ARGUMENT ...........................................................................................................6

II.    PETITIONER DOES NOT MEET SECTION 1782'S STATUTORY REQUIREMENT THAT THE DISCOVERY BE "FOR USE" IN A FOREIGN ADJUDICATIVE PROCEEDING........................................................................6

III.    SECTION 1782'S DISCRETIONARY FACTORS WEIGH STRONGLY AGAINST GRANTING THE APPLICATION .........................................................11

    A.    The Anticipated Foreign Proceedings Are Incompatible with Domestic Notions of Propriety and Will Deprive Respondent of Due Process....................11

    B.    The Application Seeks Discovery that is Unduly Burdensome and Intrusive........................................................................................14

IV.    ANY OBLIGATION TO PROVIDE DISCOVERY SHOULD BE CONDITIONED ON A RECIPROCAL EXCHANGE OF INFORMATION BY PETITIONER.....................................................................................................16

CONCLUSION.........................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguinda v. Texaco, Inc.*,
  Nos. 93 Civ. 7527 (JSR), 94 Civ. 9266, 2000 U.S. Dist. LEXIS 745 (S.D.N.Y.
  Jan. 31, 2000) ................................................................................................................. 13

*Ayyash v. Crowe Horwath LLP*,
  No. 17-mc-482 (AJN), 2018 U.S. Dist. LEXIS 100258 (S.D.N.Y. June 13,
  2018) .............................................................................................................................. 10

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG L.L.P.*,
  798 F.3d 113 (2d Cir. 2015) ....................................................................................... 7, 8

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA),
Inc.*,
  747 F.3d 1262 (11th Cir. 2014) ...................................................................................... 7

*Consorcio Minero, S.A. v. Renco Grp., Inc.*,
  No. 11 MC 354, 2012 U.S. Dist. LEXIS 44317 (S.D.N.Y. Mar. 28, 2012) ................. 16, 18

*Employers Reinsurance Corp. v. Bryant*,
  299 U.S. 374 (1937) ...................................................................................................... 12

*Esses v. Hanania (In re Esses)*,
  101 F.3d 873 (2d Cir. 1996) .......................................................................................... 17

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) .......................................................................................... 12

*In re Application of Sargeant*,
  278 F. Supp. 3d 814 (S.D.N.Y. 2017) ............................................................................. 8

*In re Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of
Fortress Inv. Grp. LLC*, No. 14 Civ.1801 (NRB), 2014 U.S. Dist. LEXIS
  95578 (S.D.N.Y. July 8, 2014) .................................................................................... 9, 10

*In re Harbour Victoria Inv. Holdings Ltd.*,
  No. 15-MC-127, 2015 U.S. Dist. LEXIS 87912 (S.D.N.Y. June 29, 2015) ................. 8, 10

*In re Hulley Enters.*,
  358 F. Supp. 3d 331 (S.D.N.Y. 2019) ............................................................................ 14

*In re JSC United Chem Co. v. Uralchem*
  No. 20-3651 (CCC), 2020 U.S. Dist. LEXIS 131492 (D.N.J. July 24, 2020) ............. 13, 14

*In re Letter of Request from the Gov't of France*,
  139 F.R.D. 588 (S.D.N.Y. 1991) ................................................................................... 12

*In re Porsche Automobil Holding S.E.*,
  No. 19-mc-166 (RA), 2021 U.S. Dist. LEXIS 115099 (S.D.N.Y. June 21,
  2021)...................................................................................................................................17

*In re Request for Judicial Assistance*,
  No. 3:96 MC 419 (EBB), 1997 U.S. Dist. LEXIS 23137 (D. Conn. Oct. 10,
  1997)....................................................................................................................................13

*In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul,
  Korea*,
  555 F. 2d 720 (9th Cir. 1977) ...........................................................................................12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) .......................................................... 5, 6, 7, 11, 12, 13, 14, 17, 18

*Jiangsu S.S. Co. v. Success Superior Ltd.*,
  No. 14 Civ. 9997 (CM), 2015 U.S. Dist. LEXIS 18388 (S.D.N.Y. Jan. 6,
  2015) .....................................................................................................................................9

*John Deere Ltd. v. Sperry Corp.*,
  754 F.2d 132 (3d Cir. 1985) ..............................................................................................12

*Kiobel v. Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018) ........................................................................................6, 16

*Mangouras v. Boggs*,
  980 F.3d 88 (2d Cir. 2020) ..................................................................................................9

*Minatec Fin. S.A.R.L. v. SI Group, Inc.*,
  No. 08-cv-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug.
  18, 2008)..............................................................................................................................17

*Mones v. Com. Bank of Kuwait, S.A.K.*,
  204 F. App'x 988 (2d Cir. 2006) .......................................................................................12

*Rhodes v. ITT Sheraton Corp.*,
  No. Civ.A. 97-4530-B, 1999 Mass. Super. LEXIS 2 (Mass. Super. Ct. Jan. 15,
  1999)............................................................................................................................. 14, 16

*Ruhrgas Ag v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ...........................................................................................................12

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
  376 F.3d 79 (2d Cir. 2004) ..................................................................................................6

*United States v. Sealed 1*,
  235 F.3d 1200 (9th Cir. 2000) ..................................................................................... 12, 14

## Statutes

28 U.S.C. § 1782.................................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 16, 17

28 U.S.C. § 1782(a) ............................................................................................... 5, 6, 17

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 15

Joseph L. Brand, Aspects of Saudi Arabian Law and Practice, 9 B.C. Int'l &
    Comp. L.R. 1, 11 (1986) ...................................................................................... 14, 16

Nancy B. Turck, Dispute Resolution in Saudi Arabia, 22 Int'l Law (1988)) ........................ 14, 16

Mohamad Samer Mahmoud Fayyad Abdulhadi ("Mr. Abdulhadi")[1] hereby submits this memorandum of law in support of his motion to: (i) vacate this Court's November 10, 2022 Order (ECF No. 11) (the "Order") granting the *Ex Parte* Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 from Muhammad Samer Bin Mahmoud Abul-Hadi and J.P. Morgan Chase Bank, N.A. (the "Application" or "Appl."); and (ii) quash the document and deposition subpoenas that Petitioner Abdulrahman Mutabagani ("Petitioner" or "Mr. Mutabagani") served on Mr. Abdulhadi pursuant to the Order.

## PRELIMINARY STATEMENT

Though 28 U.S.C. § 1782 authorizes federal district courts to grant discovery assistance to litigants in foreign proceedings, nothing in its text or history suggests that Congress intended for courts to turn a blind eye to American notions of propriety and fundamental due process protections in exercising that authority.  In appropriate cases, Section 1782 serves important interests with its "twin aims" of efficiency and comity.  This is not such a case.  The Court's order granting the Application should be vacated and the subpoenas quashed.

Petitioner's application, granted by this Court, promotes neither efficiency nor comity, but rather subverts these purposes.  The principle failing of the Application is that Petitioner has already conceded the courts of Saudi Arabia have no jurisdiction over Mr. Abdulhadi. Accordingly, there can be no legitimate proceedings against him there to which this Court might grant assistance.  In the absence of any legitimate proceedings in Saudi Arabia against Mr. Abdulhadi, it follows that Petitioner cannot demonstrate that granting the Application is "in the interests of justice," and allowing discovery of Mr. Abdulhadi under these circumstances would frustrate rather than promote the limited aims of Section 1782.

---

[1] Mr. Abdulhadi is incorrectly identified in Petitioner's *ex parte* Application under 28 U.S.C. § 1782 as "Mohammad Samer Bin Mahmoud Abdul-Hadi."

This Court should vacate the Order and quash the requested discovery for three primary reasons.

*First*, Petitioner fails to meet the requisite statutory elements under Section 1782. Specifically, Petitioner has not satisfied his burden of demonstrating that the requested discovery is "for use" in a foreign proceeding that is "within reasonable contemplation." The alleged nonpayment of over $40 million dollars which purports to form the basis of Petitioner's claims has been dormant for half a decade. During that time, Petitioner has not taken any concrete steps toward instituting proceedings in Saudi Arabia and offers no reason why such a suit is now suddenly imminent. His mere retention of Saudi legal counsel coupled with a made-for-litigation assertion that he is "committed to filing this action in Saudi Arabia as soon as possible" rings hollow against the passage of time and is insufficient to meet the statutory standard. Where here, Petitioner baldly attempts to misuse Section 1782 to investigate whether litigation is possible in the first place, it amounts to nothing more than a fishing expedition which courts have held is not an appropriate basis to compel discovery.

*Second*, the second discretionary factor described in *Intel Corp. v. Advanced Micro Devices, Inc.*—the nature of the foreign tribunal and the character of the proceedings abroad—strongly favors denial of the Application. Under this factor, district courts must scrutinize the underlying fairness of foreign proceedings to insure they comply with notions of due process, and if the foreign proceedings will depart from domestic concepts of fundamental due process and fairness, denial of the Application is warranted. Here, Petitioner and his Saudi legal counsel readily admit that ***Mr. Abdulhadi is not subject to the personal jurisdiction of the Saudi courts***, but that the discovery they seek will be used to prosecute a lawsuit against him in Saudi Arabia anyway. He thereby asks this Court to ignore American notions of propriety and fairness and use

its discovery power to assist him in depriving Mr. Abdulhadi of due process overseas.  Section 1782's text gives no indication that Congress intended for the statute to be used in this fashion. There is simply no basis to find that helping Petitioner prosecute a lawsuit against Mr. Abdulhadi, where Petitioner admits that the courts have no jurisdiction over him, is "in the interests of justice." Most certainly, it is not.

*Third,* the fourth discretionary *Intel* factor, which looks to whether the requests are unduly burdensome or intrusive, also weighs against the requested discovery.  Far from "narrowly tailored," the subpoenas demand that Mr. Abdulhadi sit for hours of deposition testimony and produce documents relating to a wide range of alleged financial transactions dating back nearly 10 years.  Not only do the subpoenas demand the production of documents concerning individuals and purported transactions that are not even mentioned in the Application or supporting declarations, but they also seek documents allegedly sent and received by Petitioner himself, which he should, therefore, have in his own possession.  Moreover, the subpoenas unduly threaten the confidentiality of Mr. Abdulhadi's confidential financial information, as Petitioner offers no assurances (because he cannot) that the Saudi courts will safeguard the confidentiality of the requested documents.  Under established case law in this Circuit, each of these circumstances weighs heavily against ordering discovery.

In the alternative, to the extent the Court declines to vacate the Order and quash the subpoenas, Mr. Abdulhadi respectfully requests that the Court set a conference whereby the scope of any discovery ordered by the Court can be discussed and condition any discovery by Mr. Abdulhadi upon Petitioner's agreement to provide reciprocal discovery, to allow for fairness and parity in this Section 1782 proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      Respondent Mohamad Abdulhadi

Mr. Abdulhadi is a Saudi Arabian citizen who currently resides in New York.  *See* Declaration of Mohamad Samer Mahmoud Fayyad Abdulhadi ("Abdulhadi Decl."), attached as Exhibit A to the Declaration of Richard A. Edlin ("Edlin Decl."), at ¶ 10.  *Id.*  Mr. Abdulhadi, who received a bachelor's degree and a master's degree from the University of Detroit, moved to Saudi Arabia in October 1986 after being offered a position at Banque Saudi Fransi ("BSF").  Abdulhadi Decl. ¶ 4.  During his employment at BSF, Mr. Abdulhadi was introduced to Mutabagani.  *Id.*  Mr. Abdulhadi resided in Saudi Arabia until November 2017, at which time he left the country and moved to the United States.  *Id.* at ¶ 5.  Mr. Abdulhadi has no intention of ever returning to Saudi Arabia.  *Id.* at ¶ 6.

### B.      Response to Petitioner's "Relevant Facts"

Where, as here, the subpoenas should be quashed and the proceeding dismissed in its entirety, Mr. Abdulhadi respectfully submits that there is no specific need to address Petitioner's self-serving narrative, and thus refrains from any direct response to the "facts" outlined in the Application.[2]

### C.      Petitioner's Section 1782 Application and Requests for Discovery from Mr. Abdulhadi

Petitioner commenced this action on October 26, 2022, by filing an *ex parte* application for discovery pursuant to 28 U.S.C. § 1782, along with the supporting memorandum of law, declarations, and exhibits attached thereto, seeking to obtain discovery in the form of document subpoenas to be served on Mr. Abdulhadi and J.P. Morgan Chase Bank, and a deposition subpoena

---

[2] Mr. Abdulhadi expressly reserves all rights, claims, objections, and defenses available to him in connection with this matter.

to be served on Mr. Abdulhadi.  ECF Nos. 2-9.  In support of the Application, Petitioner alleged that the testimony and documents were "for use in an action to be brought in the Court of the First Instance in Saudi Arabia," though no such action has been filed for the more than five-year period during which the Petitioner alleges he is owed tens of millions of dollars.  Appl. at 1.  This Court granted Petitioner's application on November 10, 2022, and authorized Petitioner to "issue and serve subpoenas on Respondents in substantially similar form to those attached as exhibits to the Declaration of Michael Sanfilippo."  ECF No. 11.

Despite Petitioner's claim that his requests seek only "targeted discovery," the Subpoenas' demands are extensive.  *See* Appl. at 1.  Petitioner seeks to compel production of documents from a ten-year period, "from January 1, 2013 to the present," that may be responsive to any of 16 separately numbered document requests, each of which is modified and subject to pages of definitions and instructions.  *See* Subpoena Duces Tecum of Mr. Abdulhadi, attached as Exhibit B to the Edlin Decl., at 4-8.

## STATUTORY OVERVIEW OF 28 U.S.C. § 1782

To obtain discovery under 28 U.S.C. § 1782, a petitioner must first establish three statutory prerequisites: (1) the person from whom discovery is sought must "reside[]" or be "found" in this district, (2) the discovery must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made by a "foreign or international tribunal or upon the application of any interested person." 28 U.S.C. § 1782(a).  Even where a petitioner satisfies the three statutory prerequisites, however, the Court is "not required to grant a § 1782(a) discovery application simply because [it has] the authority to do so."  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  Instead, the Supreme Court identified four key factors to guide the courts' exercise of discretion under Section 1782, specifically: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for §

1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

These factors "are not to be applied mechanically," and district courts are directed to consider "any other pertinent issues arising from the facts of the particular dispute." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). Each of the factors also must be exercised in light of the twin aims of § 1782: "providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004).

## **ARGUMENT**

## II.     **PETITIONER DOES NOT MEET SECTION 1782'S STATUTORY REQUIREMENT THAT THE DISCOVERY BE "FOR USE" IN A FOREIGN ADJUDICATIVE PROCEEDING**

The Application is defective because Petitioner does not satisfy the threshold statutory requirement that the requested discovery be "for use in a foreign proceeding before a foreign [or international] tribunal." *See* 28 U.S.C. § 1782. Despite claiming that Mr. Abdulhadi has not returned over $40 million in funds since October 2017, at no point over the past five years has Petitioner commenced litigation in Saudi Arabia. Nor does Petitioner allege that he has taken any concrete steps towards filing a lawsuit, to the extent one could be filed at all. Instead, Petitioner seeks to obtain the discovery at issue based on bare representations by his Saudi Arabian counsel

that he was "retained . . . to bring an action on [Petitioner's] behalf before the Court of the First Instance in Saudi Arabia," and that Petitioner "instructed [him] to prepare the necessary court papers." *See* Al-Shumrani Decl. ¶¶ 5, 6.  But counsel's representation that he first needs the discovery to investigate the basis for Petitioner's claims, and then, if successful, he "intends to bring the Saudi Arabian Action as soon as possible," does not satisfy Section 1782.  *Id.* at ¶ 6. Much if not all the information Petitioner alleges forms the basis of his claims either involves him directly or would be in the possession of the banks through which he alleges transactions were conducted.  Mr. Abdulhadi is not required for any of that, and the fact that for over five years, alleged claims for more than $40 million have ***never*** been initiated ***anywhere*** underscores the implausibility of Petitioner's request to this Court.

Though a foreign proceeding need not be pending at the time an application is made, Section 1782 applicants must demonstrate that future proceedings are "within reasonable contemplation." *Intel Corp.,* 542 U.S. at 259.  The Second Circuit has explained that the "inclusion of the word 'reasonable' in the 'within reasonable contemplation' formulation indicates that the proceedings cannot be merely speculative . . . the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015).  There is nothing in the statute or case law which suggests that an applicant's mere parroting of legal standards is enough to trigger the involvement of a federal district court, and, at a minimum, applicants must demonstrate to the court "some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124.  Moreover, district courts "must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Id.* at 123 (quoting

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014)).  These requirements help courts "guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it."  *In re Application of Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017).

Courts in this Circuit have repeatedly rejected Section 1782 applications where—like Petitioner's here—the discovery sought is a "fishing expedition" for anticipated use in "nonexistent, purely hypothetical proceedings."  *In re Harbour Victoria Inv. Holdings Ltd.*, No. 15-MC-127, 2015 U.S. Dist. LEXIS 87912, at *19-20 (S.D.N.Y. June 29, 2015).  In *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG L.L.P.*, for example, creditors of Saudi Arabian companies that defaulted on their debts in 2009 filed a Section 1782 petition requesting documents from accounting firms relating to audits of the defaulted companies.  798 F.3d at 115.  Petitioners filed their application in 2014, nearly five years after the default, and alleged that they intended to use the discovery to initiate legal proceedings against the companies and accounting firms in Saudi Arabia.  *Id.* at 116.  The district court denied the application, and Petitioners appealed.  In affirming the district court's order, the Second Circuit found that the mere allegation Petitioners "had retained counsel and were discussing the *possibility* of initiating litigation" had "done little to make an objective showing that the planned proceedings were within reasonable contemplation" under *Intel*.[3]  *Id.* at 124 (emphasis in original).  The Court further explained that "[i]n light of the substantial length of time between the Saudi conglomerates' default in 2009 and the filing of the Funds' § 1782 application in 2014, we cannot say that the district court erred in determining that the anticipated proceedings were not within reasonable contemplation at that time."  *Id.*

---

[3] After filing their application with the district court, petitioners filed a proceeding in English court, and counsel for petitioners advised the court of the same at oral argument.  *Id.* at 124.  The Second Circuit did not consider this fact on appeal, holding that "[w]e must instead consider the facts as they were presented to the district court" at the time the application was filed.  *Id.*

Similarly, in *Mangouras v. Boggs*, 980 F.3d 88, 91 (2d Cir. 2020), the Second Circuit vacated the district court's order granting petitioner's Section 1782 application where the petitioner failed to provide sufficient "objective indici[a]" that his unfiled lawsuits against individuals who allegedly provided false testimony in his criminal trial in Spain were "more than merely speculative." *Id.* at 101. Though Petitioner "stated that he intended to use the discovery he would obtain through the § 1782 application to draft a . . . [c]riminal complaint for submission in Spain" his failure to "lay out . . . a sufficiently concrete basis for his belief" that the witnesses gave false testimony rendered his claims speculative. *Id.* The Second Circuit also was not persuaded by the submission of petitioner's Spanish counsel in support of the application, as her statement that the discovery was necessary to establish the witnesses provided false testimony "only underscored the tentativeness" of the criminal proceedings. *Id.* That the petitioner filed his application in 2017, nearly five years after facing criminal charges in Spain, also further demonstrated the petitioner's inability to show the proceedings "[would] be instituted within a reasonable time." *Id.* Numerous other courts in this Circuit have denied Section 1782 requests on the same grounds. *See, e.g., In re Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 Civ. 1801 (NRB), 2014 U.S. Dist. LEXIS 95578, *18-19 (S.D.N.Y. July 8, 2014) (*"Fortress"*) (denying application as a "fishing expedition" being used to "investigate whether litigation is possible in the first place," which is "not an appropriate [basis] for a court to compel discovery"); *Jiangsu S.S. Co. v. Success Superior Ltd.,* No. 14 Civ. 9997 (CM), 2015 U.S. Dist. LEXIS 18388, at *15 (S.D.N.Y. Jan. 6, 2015) ("The only thing that the contemplated § 1782 discovery would assuredly be 'in aid' of is Jiangsu's decision-making, and the statute is not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings"); *In re Harbour*, 2015 U.S. Dist. LEXIS 87912, at

*20 (denying application as a "fishing expedition" for a "purely hypothetical proceeding" where petitioner sought discovery of bank records to establish a basis and location for its claims); *Ayyash v. Crowe Horwath LLP,* No. 17-mc-482 (AJN), 2018 U.S. Dist. LEXIS 100258, at *6 (S.D.N.Y. June 13, 2018) (denying application because the Court was "concerned that [the applicant] [wa]s using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against [the discovery target]").

Like in *Certain Funds* and *Mangouras,* Petitioner fails to provide sufficient "objective indici[a]" that the Saudi Arabian proceeding is reasonably contemplated.  The $41 million in funds that Petitioner purportedly transferred to Mr. Abdulhadi occurred between 2014 and 2017, and Petitioner alleges that Mr. Abdulhadi has "not made any transfers back to Mr. Mutabagani" since October 2017.  Mutabagani Decl. at ¶¶ 8, 13.  Given the passage of over five years—during which no legal action was taken or even seemingly considered—Petitioner's representation that he needs the discovery to file a lawsuit "as soon as possible" does not satisfy the reasonable contemplation standard under *Intel* and its progeny.  *Id.* at ¶ 18.  Nor does the submission by Petitioner's Saudi legal counsel save him where Dr. Al-Shumrani claims to need the discovery to investigate whether litigation is possible in the first place.  Al-Shumrani Decl. ¶ 14 (stating that an investigation into the location of the alleged funds is needed before he can "make sufficient allegations to assert the contemplated action in the Saudi Arabian Court").  Like the court in *Fortress* held, this is "not an appropriate [basis] for a court to compel discovery," and it does not satisfy Petitioner's burden of showing that the hypothetical litigation he has declined to initiate for more than five years is "within reasonable contemplation."  *Fortress,* 2014 U.S. Dist. LEXIS 95578, at *18.  If anything, the passage of so much time, coupled by mere assertions by a Saudi attorney which do not stand

up to even the most simplistic analysis, compels this Court to grant Mr. Abdulhadi's motion to vacate and quash.

## III.   SECTION 1782'S DISCRETIONARY FACTORS WEIGH STRONGLY AGAINST GRANTING THE APPLICATION

Even if Petitioner's specious allegations of a future litigation met the statutory requirements for Section 1782 discovery (they do not), this Court still has broad discretion to deny the Application and should do so here. *Intel,* 542 U.S. at 260. As more fully discussed below, both the second and the fourth discretionary factors articulated in *Intel* counsel against granting Petitioner's application and allowing discovery of Mr. Abdulhadi under these circumstances would frustrate rather than promote the limited purpose of Section 1782.

### A.   The Anticipated Foreign Proceedings Are Incompatible with Domestic Notions of Propriety and Will Deprive Respondent of Due Process

As an initial matter, Petitioner makes plain that if the Court assists him, he plans to use any discovery he obtains to prosecute an action against Mr. Abdulhadi in Saudi Arabia ***despite admitting there is no personal jurisdiction over Mr. Abdulhadi***. *See* Appl. at 10 (stating that Mr. Abdulhadi, who resides in New York, "is not subject to the personal jurisdiction of the Saudi Arabian Court," and that it is "unlikely that Mr. Abdul-Hadi will voluntarily submit to the jurisdiction of the Saudi Arabian Court to defend against or respond to the contemplated breach of contract action"); *see also id.* ("Mr. Abdul-Hadi is outside of the jurisdiction of the Saudi Arabian Court").

Petitioner's suggestion that the lack of jurisdiction "weighs in favor" of granting his application is completely wrong and ignores that the prosecution of such an action against Mr. Abdulhadi would depart from all American concepts of fundamental due process and fairness, thus weighing *against* the grant of discovery. Accordingly, the "nature of the foreign tribunal [and] the

11

character of the proceedings . . . abroad"—the second *Intel* factor—strongly favors denial of the Application.  *Intel,* 542 U.S. at 264.

Personal jurisdiction is a touchstone principle of American law, without which federal courts are "powerless to proceed to an adjudication."  *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989 (2d Cir. 2006) (citing *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)); *see also Employers Reinsurance Corp. v. Bryant,* 299 U.S. 374, 382 (1937) ("By repeated decisions in this Court it has been adjudged that the presence of the defendant in a suit *in personam* . . . is an essential element of the jurisdiction of a district . . . court as a federal court, and that in the absence of this element the court is powerless to proceed to an adjudication").  Though Section 1782 allows federal district courts to use their discovery powers to assist foreign tribunals, neither its text nor its legislative history suggests that Congress intended for courts to do so with a complete disregard for American notions of propriety and due process.  Instead, prior to granting Section 1782 discovery, courts are directed to "scrutinize the underlying fairness of foreign proceedings to insure they comply with notions of due process."  *Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1099 (2d Cir. 1995); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132 n.3 (3d Cir. 1985).  Inquiries into the nature and character of the foreign proceedings are appropriate if "departures from our concepts of fundamental due process and fairness are involved," or if the foreign proceedings "are unfair or incompatible with domestic notions of propriety."  *In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*, 555 F. 2d 720, 724 (9th Cir. 1977); *United States v. Sealed 1*, 235 F.3d 1200, 1206 (9th Cir. 2000) (quoting Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1 (1998)); *see also In re Letter of Request from the Gov't of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991) (federal courts may consider the

propriety of the use of the evidence obtained under § 1782 where there is a "showing that a requesting country is manipulating § 1782 in a manner offensive to concepts of fundamental due process and fairness"); *In re Request for Judicial Assistance*, No. 3:96 MC 419 (EBB), 1997 U.S. Dist. LEXIS 23137, at *9 (D. Conn. Oct. 10, 1997) (same).

The New Jersey District Court's holding in *In re JSC United Chem Co. v. Uralchem* is highly instructive on this issue.  No. 20-3651 (CCC), 2020 U.S. Dist. LEXIS 131492 (D.N.J. July 24, 2020).  There, Russian chemical company Uralchem served Section 1782 subpoenas on bank branches in New Jersey, seeking discovery for claims it sought to bring in Russia against Lawton Lane Chemical.  *Id.* at *1-2.  Lawton opposed the application, claiming, among other things, that the second *Intel* factor strongly weighed against discovery because the Russian proceedings would not comport with American notions of due process.  *Id.* at 15.  In exercising its discretion to deny the application, the district court held that Section 1782 discovery must be "intended for use in a foreign proceeding which comports with notions of due process," and the petitioner must establish that it "is in the interests of justice" to grant the application.  *Id.* at *15-16 (citing *Aguinda v. Texaco, Inc.*, Nos. 93 Civ. 7527 (JSR), 94 Civ. 9266, 2000 U.S. Dist. LEXIS 745, at *3 (S.D.N.Y. Jan. 31, 2000) and *Intel*, 542 U.S. at 264).   And though the Court refrained from "comment[ing] on the overall fairness of the Russian judicial system," it found that there were "real questions about whether a proceeding in Russia would afford due process or be in the interests of justice," which weighed against the grant of discovery.[4]  *Id.* at 19.

Like in *JSC,* this Court need not comment on the fairness of the Saudi Arabian courts to find that helping Petitioner prosecute a lawsuit against Mr. Abdulhadi, where Petitioner admits

---

[4] The Court's ruling was also based, in part, on Uralchem's inability to establish the "for use" requirement of the *Intel* analysis.  The Court had also found that only one of the *Intel* factors warranted granting the application while three factors weighed against granting it.

that the courts have no jurisdiction over him, is "incompatible with domestic notions of propriety" and due process. *Sealed 1*, 235 F.3d at 1206. Mr. Abdulhadi left Saudi Arabia and came to the U.S. in November 2017. Abdulhadi Decl. at ¶ 5. He currently resides in New York and has no intention of ever returning to Saudi Arabia. *Id.* at ¶ 6. Given these circumstances, both Petitioner and his Saudi legal counsel admit that the Saudi Arabian courts have no jurisdiction over Mr. Abdulhadi. Nevertheless, Al-Shumrani asserts that he intends to "use any evidence obtained in this discovery in the contemplated action," as "[t]here is no rule of procedure that would prevent such discovery from being admissible in the courts of Saudi Arabia." Al-Shumrani Decl. ¶¶ 13, 15. The effect of this statement—which suggests that the Saudi Arabian courts will allow the prosecution of Mr. Abdulhadi without jurisdiction[5]—is that by granting the discovery, this Court will help Petitioner deprive Mr. Abdulhadi of due process of law. Petitioner does not show, as he must, that doing so is "in the interests of justice," and thus denial of the Application is appropriate. *JSC United,* 2020 U.S. Dist. LEXIS 131492, at *19.

### B.  The Application Seeks Discovery that is Unduly Burdensome and Intrusive

The Application is also defective for the independent reason that the discovery is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265 (stating that under the fourth *Intel* factor, "unduly intrusive or burdensome requests may be rejected" at the discretion of the district court). In evaluating the scope of a Section 1782 request, courts apply "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *In re Hulley Enters.,* 358 F. Supp. 3d 331, 352 (S.D.N.Y. 2019) (internal citation omitted). Discovery requests under Section 1782 thus must be

---

[5] Saudi courts "do not follow any uniform rules of procedure" and have "no system of binding judicial precedent or case law." *Rhodes v. ITT Sheraton Corp.*, No. Civ.A. 97-4530-B, 1999 Mass. Super. LEXIS 2, at *7 (Mass. Super. Ct. Jan. 15, 1999) (citing Joseph L. Brand, Aspects of Saudi Arabian Law and Practice, 9 B.C. Int'l & Comp. L.R. 1, 11 (1986) and Nancy B. Turck, Dispute Resolution in Saudi Arabia, 22 Int'l Law, 415, 443 (1988)) (rejecting Saudi Arabia as the more appropriate forum for plaintiff's personal injury suit due to, among other things, biases and lack of basic procedures).

"proportional" considering "the issues at stake in the action . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Even assuming Petitioner truly needed to "locate the subject funds, or to confirm they have been spent" (Al-Shumrani Decl. ¶ 14)—which Mr. Abdulhadi vehemently disputes—nearly all the requested documents were either sent or received by Petitioner directly,[6] or can be obtained from the banks in which Petitioner alleges various transactions occurred.[7]  Petitioner offers no explanation as to why Mr. Abdulhadi must sit for hours of deposition testimony for this purpose, let alone why he must search for and produce documents relating to a wide range of alleged financial transactions dating back nearly 10 years.  That the Subpoenas also demand the production of documents concerning individuals and purported transactions that Petitioner does not even mention in the Application (let alone explain how the importance of that discovery justifies the burden to Mr. Abdulhadi), further demonstrates the intrusiveness of the requests.[8]  Clearly other motivations are behind this application.

Even more significantly, Petitioner seeks discovery of highly sensitive financial documents but fails to provide this Court with any assurances that the Saudi courts will safeguard the

---

[6] *See, e.g.,* Edlin Decl. Ex. B at Request 1 ("[a]ll documents and communications, including emails, text messages and letters, exchanged to, from or including Mutabagani"); *id.*at Request 2.b ("agreement[s] between You and Mutabagani, in which Mutabagani would assume Your personal debt in connection with a real estate development project involving United Real-Estate Company"; *id.*at Request 2.c ("[t]he letter written from You to Mutabagani, dated November 18, 2014, in which you agree to deposit 10,576,839 Saudi Riyals to Mutabagani's portfolio in his name").

[7] *See, e.g.,* Edlin Decl. Ex. B at Request 4 ("[a]ll documents evidencing Your receipt of the Funds from Mutabagani"); *id.* at Request 5 (seeking the "location" of monetary amounts allegedly transferred from Petitioner to Mr. Abdulhadi); *id.* at Request 9 ("[d]ocuments identifying any and all personal property purchased"); *id.* at Request 10 ("[d]ocuments reflecting payments or other transfers of the Funds for any other purpose (*i.e.,* rent payments, utility payments, gifts, etc.)").

[8] For example, the Subpoena requests "[a]ny and all documents or records reflecting" the location of certain money purportedly transferred from Mutabagani Mr. Abdulhadi "via transfers from Khaled Al-Hussein on or about June 12, 2014," and monetary amounts allegedly transferred by Mutabagani "to

confidentiality of Mr. Abdulhadi's documents, which weighs heavily against ordering discovery. *Kiobel,* 895 F.3d at 247 (finding that fourth *Intel* factor weighed against granting § 1782 petition, in part, because requested documents were subject to protective order and petitioner did not assure the district court that the Dutch courts would enforce the protective order that safeguarded the confidentiality of respondent's documents). These concerns are particularly acute given Petitioner intends to file suit in the Saudi Arabian courts, a judicial system where the courts "do not follow any uniform rules of procedure" and have "no system of binding judicial precedent or case law." *Rhodes,* 1999 Mass. Super. LEXIS 2, at *7 (citing Joseph L. Brand, *Aspects of Saudi Arabian Law and Practice,* 9 B.C. Int'l & Comp. L.R. 1, 11 (1986) and Nancy B. Turck, *Dispute Resolution in Saudi Arabia,* 22 Int'l Law, 415, 443 (1988)). The burden to Mr. Abdulhadi to comb through documents and sit for a deposition without being able to ensure the protection of his confidential financial information wholly outweighs the benefit to Petitioner. Accordingly, the fourth *Intel* factor weighs against the grant of discovery.

## IV.   ANY OBLIGATION TO PROVIDE DISCOVERY SHOULD BE CONDITIONED ON A RECIPROCAL EXCHANGE OF INFORMATION BY PETITIONER

To the extent this Court is inclined to grant discovery from Mr. Abdulhadi, then it should also exercise its broad discretion to set a conference to discuss the scope of that discovery and condition any relief on a reciprocal exchange of information by Petitioner. The Second Circuit and the Supreme Court have repeatedly emphasized the power of district courts to impose reciprocal discovery as a condition of relief under § 1782, as it "lend[s] parity to the disclosure mix." *Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 11 MC 354, 2012 U.S. Dist. LEXIS 44317, at *7 (S.D.N.Y. Mar. 28, 2012) (granting reciprocal discovery when respondent to § 1782

---

Union Real Estate Company Ltd. and Saul Al-Arifi on Your behalf on or about July 3, 2014 to March 2, 2017." Edlin Decl. Ex. B, ¶¶ 5(a), 5(d).

application was a party to the foreign proceeding); *Minatec Fin. S.A.R.L. v. SI Group, Inc.*, No. 08-cv-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *28 (N.D.N.Y. Aug. 18, 2008) (granting reciprocal discovery based on the "flexibility of § 1782(a)" which "allows the court to be creative in fashioning relevant discovery mandates"); *Esses v. Hanania (In re Esses)*, 101 F.3d 873, 876 (2d Cir. 1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems"); *Intel*, 542 U.S. at 262 (finding that a carefully crafted order for reciprocal discovery in light of the dispute was within the discretion of the court). In determining whether to grant such reciprocal discovery, courts consider, *inter alia*: (1) how closely the reciprocal discovery sought relates to the materials requested in the initial Section 1782 application; (2) whether the respondent would be unable to initiate its own section 1782 application against the initial applicant; (3) the location of the evidence sought and whether the respondent could obtain the material from the applicant in the foreign litigation; (4) the degree to which the respondent has a substantial interest in the foreign litigation; and (5) the timing of the request for reciprocal discovery. *In re Porsche Automobil Holding S.E.*, No. 19-mc-166 (RA), 2021 U.S. Dist. LEXIS 115099, at *9-10 (S.D.N.Y. June 21, 2021) (collecting cases).

Here, basic principles of fairness necessitate that Petitioner be subject to reciprocal discovery. There can be no dispute that Mr. Abdulhadi has a strong interest in receiving deposition testimony and document discovery from Petitioner pertaining to the creation and termination of the so-called "Bare Trust," the alleged transfers of money between Petitioner, Mr. Abdulhadi, and other third-parties in connection with real estate development projects, and all other topics raised in the Subpoenas. Mr. Abdulhadi's need for reciprocal discovery is particularly critical because Petitioner is a Saudi citizen with no presence in the United States, and he thus has no ability to

initiate his own Section 1782 application.  *See Consorcio Minero*, 2012 U.S. Dist. LEXIS 44317, at *9 ("Here, Renco cannot initiate its own Section 1782 action against Cormin because Cormin is a Peruvian company and not found in any district in the United States. This favors granting a condition of reciprocal discovery").  And there is similarly no doubt that Mr. Abdulhadi—as a named party to Petitioner's anticipated lawsuit—has a "substantial interest" in the foreign proceeding.  *Intel*, 542 U.S. at 262 ("[w]hen information is sought by an 'interested person,' a district court could condition relief upon that person's reciprocal exchange of information").

Petitioner should not be permitted to obtain broad discovery from Mr. Abdulhadi in the United States while simultaneously refusing to engage in a reciprocal exchange of information. Such a result would not only be prejudicial and inequitable to Mr. Abdulhadi, but it would also be inconsistent with Supreme Court and Second Circuit jurisprudence.  For these reasons, Mr. Abdulhadi respectfully requests that any discovery obligations imposed on him by virtue of the Order be discussed at a conference with this Court, and that the Court compel Petitioner to: (i) respond to narrowly tailored reciprocal discovery requests to be served at a later date by Mr. Abdulhadi; and (ii) make himself available for deposition.

<u>**CONCLUSION**</u>

For the reasons set forth more fully above, Mr. Abdulhadi respectfully requests that this Court grant his Motion and enter an order: (i) vacating this Court's November 10, 2022, Order granting the Application; (ii) quashing the document and deposition subpoenas to Mr. Abdulhadi; and (iii) granting Mr. Abdulhadi any other and further relief that the Court deems just and proper. Alternatively, Mr. Abdulhadi requests that this Court condition any discovery allowed from him on reciprocal discovery from Petitioner.

Dated:  January 17, 2023                Respectfully submitted,

                                        **GREENBERG TRAURIG, LLP**

                                        By: /s/ *Richard A. Edlin*
                                              Richard A. Edlin
                                              Dale R. Goldstein
                                              One Vanderbilt Avenue
                                              New York, New York 10017
                                              Tel:  (212) 801-9200
                                              Fax: (212) 801-6400
                                              Email: EdlinR@gtlaw.com
                                                      GoldsteinD@gtlaw.com

                                              *Attorneys for Respondent*