UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                                              :
In re Ex Parte Application of ABDULRAHMAN                     :  **OPINION AND ORDER**
MUTABAGANI to Take Discovery Pursuant to                      :
28 U.S.C. § 1782.                                             :  22 MC 299 (VB)
                                                              :
--------------------------------------------------------------x

Briccetti, J.:

Mohamad Samer Mahmoud Fayyad Abdulhadi moves to vacate the Court's November 10, 2022, Order granting Abdulrahman Mutabagani's ex parte application for discovery pursuant to 28 U.S.C. § 1782 (Doc. #11 (the "Order")), and to quash two subpoenas—one for documents, the other for deposition testimony—served upon him pursuant to the Order. (Doc. #17).

For the reasons set forth below, the motion is DENIED except as to the first document request in the document subpoena, as to which the motion is GRANTED.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1782.

## BACKGROUND

Mutabagani is a citizen and resident of Saudi Arabia.

Abdulhadi is a Saudi Arabian citizen who moved to the United States in November 2017. Abdulhadi currently resides in New York and does not intend to return to Saudi Arabia.

On January 6, 2014, Mutabagani and Abdulhadi executed a Declaration of Bare Trust, under which Mutabagani was the sole beneficiary and Abdulhadi was the "Nominee," i.e., trustee. (Doc. #6 ("Mutabagani Decl.") ¶ 4; Doc. #6-1 (the "Trust Agreement")). Mutabagani and Abdulhadi also allegedly agreed Mutabagani would assume and satisfy a debt Abdulhadi owed to a Saudi Arabian entity, and that Abdulhadi would subsequently reimburse Mutabagani for the amount Mutabagani expended to satisfy that debt (the "Assumption Agreement").

1

(Mutabagani Decl. ¶ 7). Mutabagani claims that between June 2014 and July 2017, he transferred funds totaling $41,506,893.73 to Abdulhadi pursuant to these two agreements (the "Funds"). (Id. ¶ 8).

On January 31, 2017, Mutabagani and Abdulhadi executed a Declaration of Termination of Bare Trust. (Mutabagani Decl. ¶ 10; Doc. #6-2 (the "Trust Termination Agreement")). Although the Trust Termination Agreement expressly provides "the entire Trust Fund (as defined in the Bare Trust) has been returned to the Beneficiary [Mutabagani] absolutely," and "[t]he Beneficiary confirms that he has received the Trust Fund from the Nominee [Abdulhadi] in full and confirms that he has no further claims against the Nominee in respect of the Trust Fund" (Trust Termination Agreement at 1), Mutabagani claims Abdulhadi "wrongfully retained possession of the" Funds. (Mutabagani Decl. ¶ 11).

According to Mutabagani, Abdulhadi transferred approximately $3,135,000 to Mutabagani's JPMorgan Chase ("Chase") bank account in October 2017, but has not transferred any other funds to him. (Mutabagani Decl. ¶ 13). Since then, Mutabagani has allegedly tried to communicate with Abdulhadi via phone, email, and text messages "on several occasions," but Abdulhadi has not responded. (Id. ¶ 14).

At some point before applying to this Court for discovery in October 2022, it became "clear" to Mutabagani that Abdulhadi "has no intention of returning the funds." (Mutabagani Decl. ¶ 14). On an unspecified date, Mutabagani retained a Saudi Arabian attorney, Dr. Salman Al-Shumrani, to bring an action against Abdulhadi in Saudi Arabia "as soon as possible." (Id. ¶ 18).

Dr. Al-Shumrani attests that Mutabagani "instructed [him] to prepare the necessary court papers" to bring an action for breach of contract premised upon Abdulhadi's allegedly unlawful

2

retention of the Funds.  (Doc. #5 ("Al-Shumrani Decl.") ¶ 6).  However, according to Dr. Al-Shumrani, the Saudi Arabian court "will require Mr. Mutabagani to allege with certainty" that Abdulhadi still possesses the Funds and/or wrongfully used the Funds.  (Id. ¶ 11).  Dr. Al-Shumrani also states the Saudi Arabian courts are receptive to discovery assistance from U.S. courts.

Accordingly, on October 26, 2022, Mutabagani filed this application in aid of the "contemplated" Saudi Arabian action, requesting discovery "necessary to locate the subject funds, or to confirm they have been spent."  (Al-Shumrani Decl. ¶¶ 13–14).  Among other things, Mutabagani sought Abdulhadi's testimony and documents concerning (i) the Trust Agreement and the Assumption Agreement; (ii) certain transfers Mutabagani made to Abdulhadi through intermediaries; (iii) bank or credit union accounts where the entirety or any portion of the Funds are held; and (iv) any purchases of personal property or real property, investments, or loans made using any amount of the Funds.  Mutabagani also sought production of all communications exchanged between himself and Abdulhadi, and Abdulhadi's communications with third parties, including financial professionals and accountants, pertaining to the Funds.

In addition, Mutabagani sought Chase's documents pertaining to a Chase bank account in Abdulhadi's name, to which Mutabagani had transferred approximately $10 million of the Funds between October 2016 and July 2017, as well as Chase representatives' communications with Mutabagani and/or Abdulhadi.

On November 10, 2022, the Court granted Mutabagani's application and authorized service of the subpoenas on Abdulhadi and Chase.

On January 17, 2023, Abdulhadi appeared in this case through counsel and moved to vacate the Order and quash the subpoenas served upon him.

## DISCUSSION

I.    <u>Standard of Review</u>

Section 1782 "authorizes federal district courts to order discovery in aid of foreign proceedings." IJK Palm LLC v. Anholt Servs. USA, Inc., 33 F.4th 669, 675 (2d Cir. 2022).[1]

A party seeking discovery under Section 1782 must establish three statutory requirements: (i) "the person or entity from whom discovery is sought resides or is found in the district where the application is made"; (ii) "the requested material is for use in a foreign proceeding"; and (iii) "the application is made by a foreign or international tribunal or any interested person." IJK Palm LLC v. Anholt Servs. USA, Inc., 33 F.4th at 675.

If the three statutory prerequisites are met, a district court may grant discovery in its discretion, considering four factors (the "<u>Intel</u> factors") identified by the Supreme Court:

(1) Whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent" because a foreign tribunal presumably has authority to order discovery on its own;
(2) "The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
(3) Whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
(4) Whether the requests are unduly intrusive or burdensome.

<u>IJK Palm LLC v. Anholt Servs. USA, Inc.</u>, 33 F.4th at 675 (quoting <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 264–65 (2004)).

"The <u>Intel</u> factors are not to be applied mechanically." <u>Kiobel v. Cravath, Swaine & Moore LLP</u>, 895 F.3d 238, 245 (2d Cir. 2018). Instead, a court should consider "any other pertinent issues arising from the facts of the particular dispute," keeping in mind "the twin aims

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

of Section 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. at 244–45.

II.     Motion to Vacate the Order and Quash the Subpoenas

Abdulhadi challenges the Order and subpoenas as (i) not "for use" in a foreign proceeding, (ii) inconsistent with fundamental due process and fairness, and (iii) unduly burdensome and intrusive.

   A.     Discovery "For Use" in a Foreign Proceeding

Abdulhadi contends the requested discovery is not "for use" in a foreign proceeding because the anticipated litigation is merely speculative.[2]

The Court disagrees.

An application for discovery under Section 1782 satisfies the "for use" requirement if the materials sought "are to be used at some stage of a foreign proceeding." Mees v. Buiter, 793 F.3d 291, 295 (2d Cir. 2015). The proceeding must be "within reasonable contemplation," but need not be "pending or even imminent in order to meet the 'for use' requirement." IJK Palm LLC v. Anholt Servs. USA, Inc., 33 F.4th at 677 (quoting Intel, 542 U.S. at 258–59). Accordingly, an applicant must provide "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." Id. The Second Circuit has "not delineated what precisely an applicant must show to establish such indications." Id. However, "at a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." Id.

---

[2]     Abdulhadi does not dispute that he resides in this district or that Mutabagani is an "interested person" in the anticipated Saudi Arabian litigation, satisfying the first and third statutory requirements. 28 U.S.C. § 1782(a).

5

Here, the sworn statement from Mutabagani's Saudi Arabian attorney, Dr. Al-Shumrani, provides reliable indications that a foreign proceeding is within reasonable contemplation. Dr. Al-Shumrani attests to Mutabagani's intent to litigate "as soon as possible" (Al-Shumrani Decl. ¶ 6), describes the legal theory on which Mutabagani plans to rely, and explains how Mutabagani intends to use the requested discovery in the anticipated proceeding. See In re Top Matrix Holdings Ltd., 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement."). The Court is therefore satisfied that a Saudi Arabian proceeding is within reasonable contemplation.

That Mutabagani has not yet brought an action against Abdulhadi in the five years since the alleged breach of contract does not make his application for discovery "a 'fishing expedition' for a 'purely hypothetical proceeding.'" (Cf. Doc. #25 ("Abdulhadi Reply") at 4 (quoting In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions, 2015 WL 4040420, at *8–9 (S.D.N.Y. June 29, 2015)). Mutabagani attests he repeatedly attempted to recover the Funds from Abdulhadi without judicial intervention, but retained counsel to file an action in Saudi Arabia once it became "clear" to him that Abdulhadi would not voluntarily return the Funds. (Mutabagani Decl. ¶ 14). And the reason that action has not yet been filed, according to Mutabagani's attorney, is that he needs the discovery requested here to satisfy Saudi Arabian pleading requirements.

Thus, unlike applicants in the cases cited by Abdulhadi, Mutabagani does not seek discovery to help him decide whether or where to bring suit. Cf. Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 124 (2d Cir. 2015) (concluding district court did not err in denying application when "all that the Funds alleged before the district court was that they

6

had retained counsel and were discussing the possibility of initiating litigation"); In re Application of Sargeant, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) ("for use" requirement not met when applicant sought discovery "to assess whether to initiate actions in the United Kingdom and the Isle of Man" and application was "bereft of even the broadest contours of what the possible proceeding(s) . . . may entail"); In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions, 2015 WL 4040420, at *9 (exercising discretion to deny Section 1782 application "[b]ecause it appears that Petitioner is seeking to evade an adverse discovery ruling in its ongoing U.S. proceeding and because it appears that Petitioner is engaging in a fishing expedition to identify other foreign venues in which to bring suit").

Accordingly, the Court concludes Mutabagani has sufficiently established the discovery is "for use" in a foreign proceeding.

B. Discretionary Factors

Abdulhadi contends that even if Mutabagani satisfied the statutory requirements of Section 1782, the Court should have exercised its discretion to deny Mutabagani's application for discovery based on the second and fourth Intel factors.[3]  With respect to the second Intel factor, Abdulhadi argues that by granting discovery here, the Court would facilitate a foreign proceeding inconsistent with due process and fairness.  With respect to the fourth Intel factor, he argues the subpoenas are unduly burdensome and intrusive.

The Court does not agree the Intel factors weigh against allowing Mutabagani to take discovery from Abdulhadi.  However, the Court agrees that one of Mutabagani's document requests is unduly burdensome, justifying vacatur in part.

---

[3] Abdulhadi does not contend the first and third Intel factors weigh against granting Mutabagani's application.

7

1. The Second Intel Factor

Abdulhadi contends "the nature of the foreign tribunal [and] the character of the proceedings . . . abroad" strongly favor denying Mutabagani's Section 1782 application. (Doc. #19 ("Abdulhadi Br.") at 11–12 (quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. at 264)). However, the Court is not persuaded by Abdulhadi's argument that the anticipated proceedings would "depart from all American concepts of fundamental due process and fairness" merely because Mutabagani has not yet filed his lawsuit, and thus, Abdulhadi is not currently subject to the personal jurisdiction of Saudi Arabian courts. (Id. at 11). As Mutabagani correctly notes, Abdulhadi "makes no credible allegation that once sued and properly served in the United States under acceptable international procedures, the Saudi Arabian court will be unable to assert personal jurisdiction over Mr. Abdulhadi." (Doc. #22 ("Mutabagani Opp.") at 7). And Abdulhadi has not demonstrated that any other aspect of the anticipated Saudi Arabian proceedings would be unfair or incompatible with due process. Cf. In re JSC United Chem. Co. Uralchem, 2020 WL 4251476, at *7 (D.N.J. July 24, 2020), aff'd, 2021 WL 2660205 (D.N.J. June 29, 2021) (second Intel factor weighed against discovery for use in anticipated Russian proceedings because "[t]hree courts outside of Russia have previously found that Uralchem-related proceedings like this one may be subject to undue governmental influence").

Moreover, Abdulhadi ignores that the second Intel factor also requires considering whether the foreign government or tribunal would be receptive to this Court's assistance. (See Abdulhadi Reply at 6 (characterizing Mutabagani's arguments regarding receptivity as a "red herring")). Dr. Al-Shumrani attests, and Abdulhadi concedes (see id.), that Saudi Arabia would be receptive to the discovery—which strongly favors granting Mutabagani's application. See In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior, 2022 WL 17553067, at *8

(S.D.N.Y. Dec. 9, 2022) (denying motion to quash and finding second <u>Intel</u> factor favored discovery when moving party conceded the foreign tribunal was "receptive to judicial assistance from U.S. federal courts").

Accordingly, the Court concludes the second <u>Intel</u> factor favors granting Mutabagani's application to take discovery from Abdulhadi.

    2.    <u>The Fourth Intel Factor</u>

Abdulhadi contends the subpoenas are unduly burdensome and intrusive and should therefore be quashed. In particular, he argues the sole purpose of Mutabagani's request "for documents sent or received by [Mutabagani] directly" is to harass Abdulhadi. (Abdulhadi Reply at 9). Abdulhadi also contends the burden of "search[ing] for and produc[ing] documents relating to a wide range of alleged financial transactions dating back nearly 10 years," as well as sitting for a deposition, "wholly outweighs the benefit to" Mutabagani. (Abdulhadi Br. at 15–16).

A district court may "reject[ ] or trim[ ]" Section 1782 discovery requests that are "unduly intrusive or burdensome." <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. at 265. The Second Circuit has suggested that, in determining whether such a discovery request is unduly intrusive or burdensome, district courts shall "apply[ ] the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." <u>Mees v. Buiter</u>, 793 F.3d at 302. To assess whether a subpoena is unduly burdensome under Rule 26, courts consider, among other things, the requested "information's relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, [and] the particularity with which the documents are described." <u>Bhatt v. Lalit Patel Physician P.C.</u>, 2020 WL 13048694, at *2

9

(E.D.N.Y. Oct. 19, 2020).  Courts may also consider whether a subpoena seeks confidential information.  Cf. Fed. R. Civ. P. 45(d)(3)(B)(i).

As an initial matter, the subpoenas seek nonprivileged information relevant to the anticipated Saudi Arabian litigation.  Specifically, they seek testimony and documents concerning Abdulhadi's allegedly wrongful use and/or retention of the Funds.  Thus, the burden is on Abdulhadi to demonstrate the subpoenas are unduly burdensome.  See Dove v. Atl. Cap. Corp., 963 F.2d 15, 19 (2d Cir. 1992) ("Where the discovery is relevant, the burden is upon the party seeking non-disclosure . . . to show good cause.").

Here, Abdulhadi has failed to demonstrate the subpoenas are unduly burdensome, except with respect to the first document request served on him ("Document Request 1"), which seeks "[a]ll documents and communications, including emails, text messages and letters, exchanged to, from, or including Mutabagani." (Doc. #18-2 at 8).  There is a "diminished need for discovery" of these documents, as Mutabagani should already have access to them.  Greater New York Taxi Ass'n v. City of New York, 2017 WL 4012051, at *6 (S.D.N.Y. Sept. 11, 2017).  Furthermore, "courts in this district have noted that collection of communications such as emails can [be] particularly burdensome." In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Tanya Chuck Habib, 2022 WL 1173364, at *4 (S.D.N.Y. Apr. 20, 2022).  As such, the Court agrees with Abdulhadi that Document Request 1 is unduly burdensome.

As to the remaining document requests and the deposition subpoena, Abdulhadi has not demonstrated the burden is disproportionate to the needs of the case, given the amount in controversy and the importance of this discovery in resolving whether Abdulhadi misused or wrongfully retained the Funds.  See In re YS GM Marfin II LLC, 2022 WL 624291, at *11 (S.D.N.Y. Mar. 2, 2022) (granting motion to compel discovery under Section 1782 when

respondents did not "submit[ ] anything to substantiate their alleged burden or any estimate of their costs, [and] failed to provide Applicants with any results of any searches for responsive documents.").

Furthermore, to the extent Abdulhadi is concerned about the confidentiality of "highly sensitive financial documents" sought by the subpoenas (Abdulhadi Br. at 15), there is no apparent reason why his concerns could not be resolved by a protective order.  In re Accent Delight Int'l Ltd., 791 F. App'x 247, 252 (2d Cir. 2019) (summary order).  Indeed, Mutabagani has expressed his willingness to "execut[e] a mutually acceptable confidentiality stipulation or protective order."  (Mutabagani Opp. at 10).

Accordingly, Abdulhadi's motion to vacate the Order and quash the subpoenas is granted with respect to Document Request 1.  In all other respects, the motion is denied.

III.    Request for Reciprocal Discovery

Abdulhadi contends that, if the Court permits Mutabagani to take discovery, the Court should also allow Abdulhadi to take discovery from Mutabagani.

A district court may "condition relief under 28 U.S.C. § 1782 upon a reciprocal exchange of information."  In re Application of Gorsoan Ltd. & Gazprombank OJSC, 2014 WL 7232262, at *11 (S.D.N.Y. Dec. 10, 2014), aff'd sub nom. Gorsoan Ltd. v. Bullock, 652 F. App'x 7 (2d Cir. 2016) (summary order).  However, reciprocal discovery is not required, and as the Second Circuit has noted, "Congress purposefully engineered section 1782 as a one-way street." Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1097 (2d Cir. 1995).  Moreover, there is no indication Abdulhadi would not be able to obtain discovery in the anticipated Saudi Arabian proceedings.  See In re Application of Gorsoan Ltd. & Gazprombank OJSC, 2014 WL 7232262, at *11.

11

Accordingly, Court declines to order reciprocal discovery.

## CONCLUSION

The motion to vacate the Court's Order of November 10, 2022, and to quash two subpoenas served pursuant to the Order is DENIED except as to the first document request in the document subpoena, as to which the motion is GRANTED, as set forth above.

The Clerk is directed to terminate the motion (Doc. #17) and close this case.

Dated: April 6, 2023
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge